UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:08-cv-01233 (IDD) |
| | ) | |
| $79,650.00 SEIZED FROM BANK OF | ) | |
| AMERICA ACCOUNT ENDING IN 8247 | ) | |
| AT BANK OF AMERICA, 7400 LITTLE | ) | |
| RIVER TURNPIKE, ANNANDALE, | ) | |
| VIRGINIA, IN THE NAME OF GIRMA | ) | |
| AFEWORK, | ) | |
| Defendant. | ) | |

F I L E D

MAR 2 9 2010

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

The United States filed this civil forfeiture action pursuant to 31 U.S.C. §§ 5317 and

5324. The government seeks to have the defendant property forfeited to the United States for

disposition according to law. This matter comes before the Court on the government's Motion

for Summary Judgment. In accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the

parties in this case consented to have a United States Magistrate Judge conduct any and all

proceedings in this civil action. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1345 and

1355(a), 18 U.S.C. § 984, and 31 U.S.C. § 5317 (c)(2). Venue is proper pursuant to 28 U.S.C.

§§ 1355(b)(1)(A) and 1395(a), in that the acts or omissions giving rise to the forfeiture occurred

in this district, and the defendant is money that was seized in the Eastern District of Virginia.

For the reasons stated from the bench and in accord with reasons stated below, the Court denies

the government's Motion for Summary Judgment.

# I. BACKGROUND

## A. Procedural and Factual Background

On February 21, 2008, the United States Postal Inspection Service executed a warrant requesting seizure of $79,650 from Claimant's Bank of America account ending in 8247 ("defendant account"). Claimant, Mr. Girma Afework, who owns the defendant account, is a 58-year old Ethiopian businessman with substantial business interests in the United States.

The government filed this civil *in rem* forfeiture action on November 26, 2008, after two requests for extensions of time to file were granted.[1] The government's Complaint alleged that the Claimant made structured deposits into the defendant account with the intention of avoiding the Currency Transaction Reporting requirement of 31 U.S.C. § 5313. The allegedly eight structured deposits at issue were made over a four-day period, from April 2, 2007 to April 5, 2007. Two cash deposits were made into each of the four different accounts used by Claimant: two Bank of America accounts ("BOA") and two PNC accounts. Each deposit was made in the amount of $9,900, $9,950, or $9,980.

Following the April 2007 deposit activity, the allegedly structured deposits were consolidated into the defendant account. Subsequent to pooling his funds into the defendant account, the Claimant made the following transfers between accounts:

| Date of Transfer | Amount | Debit Account | Credit Account |
| --- | --- | --- | --- |
| April 9, 2007 | $30,000 | PNC #7994 | PNC #2701 |
| April 9, 2007 | $30,000 | BOA #6074 | BOA #8247 |
| May 22, 2007 | $93,000 | PNC #2701 | PNC #6498 |
| Mary 23, 2007 | $93,000 | PNC #6498 | BOA #8247 |

---

[1] A stipulation and Order extending the time of the United States to file its Complaint were entered on July 25, 2008. A second stipulation and Order to the same effect were entered on September 24, 2008.

In January 2009, Claimant filed an Answer to the Complaint as well as a Motion for Judgment on the Pleadings. The government opposed Claimant's motion on January 21, 2009, and Claimant replied on February 2, 2009. After a hearing on February 6, 2009, the United States District Judge, the Honorable James C. Cacheris, denied Claimant's Motion for Judgment on the Pleadings, based on the fact that Claimant's arguments were not dispositive at that stage in the litigation. Furthermore, Judge Cacheris found that the government had alleged sufficient facts to support a reasonable belief that the property was subject to forfeiture.

On May 1, 2009, Judge Cacheris issued a Scheduling Order that set an initial pretrial conference for June 3, 2009 and a final discovery deadline of September 11, 2009. At the initial pretrial conference, both parties consented to jurisdiction by the undersigned Magistrate Judge. The government then filed the present motion on October 9, 2009. This Court granted Claimant's Motion to Extend Time to File Reply to Motion for Summary Judgment and extended the response time until October 30, 2009 at 5 p.m. No further responsive pleadings were filed.

The government argues that this civil forfeiture *in rem* action under 31 U.S.C. § 5317(c)(2) involves monetary transactions or attempted transactions in violation of 31 U.S.C. § 5324(a). 31 U.S.C. § 5317(c)(2) provides for the forfeiture of "any property involved in a violation of section…5324 of this title." 31 U.S.C. § 5324 prohibits structuring of bank deposits for the purpose of evading reporting requirements under 31 U.S.C. § 5313(a). 31 U.S.C. § 5313 and 31 C.F.R. Part 103 of the Bank Secrecy Act (BSA) require that any financial institution engaged with a customer in a currency transaction (deposit or withdrawal) in excess of $10,000 must report the transaction to the IRS on the Financial Crimes Enforcement Network (FINCEN) Form 104, Currency Transaction Report (CTR).

Based upon the aforementioned statutes, the government seized defendant account and now moves this court for summary judgment. The government argues that defendant account constitutes the proceeds of transactions conducted in violation of 31 U.S.C. § 5324(a), or constitutes property traceable to such proceeds, and is therefore forfeitable to the United States pursuant to 31 U.S.C. § 5317(c)(2).

## II. STANDARD OF REVIEW

In deciding whether to grant a motion for summary judgment under Fed. R. Civ. P. 56(a), the Court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. "Where no genuine issue of material fact exists," it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

Once the moving party has met its burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving

4

party. *Anderson,* 477 U.S. at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

## III. ANALYSIS

Pursuant to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), in order to merit a finding of summary judgment, the government bears the initial burden of establishing by a preponderance of the evidence that the defendant account is forfeitable. 18 U.S.C. § 983 (c)(1); *United States v. Mondragon,* 313 F.3d 862, 865 (4th Cir. 2002). Under the "preponderance of the evidence" standard, the government must show that the relevant facts are more likely true than not." *United States v. Kiulin,* 360 F.3d 456, 461 (4th Cir. 2004). Accordingly, the government must prove by a preponderance of the evidence that the defendant account is traceable to the crime of structuring. 31 U.S.C. § 5324(a).

### A. Proof of Structuring

Federal law requires financial institutions to file reports with the Treasury Department of any cash transaction exceeding $ 10,000. 31 U.S.C. § 5313; 31 C.F.R. § 103.22(a) (1995). Federal law also makes it illegal to structure a transaction for the purpose of evading a financial institution's reporting requirement. 31 U.S.C. § 5324. An individual structures a transaction when he makes several cash deposits into a single account in amounts less than $10,000, rather than making one single cash deposit into the account in an amount exceeding $10,000. *See United States v. McMahon,* 1998 U.S. App. LEXIS 11821 at *13 fn.5 (4th Cir. 1998) (explaining the Treasury's definition of structuring).

In order for the government to prove that Claimant structured the funds in the account, the government must demonstrate: (1) The person has knowingly structured [attempted to structure] [assisted in structuring] a currency transaction; (2) the person knew of the domestic

financial institution's legal obligation to report transactions in the excess of $10,000; and (3), the purpose of the structured transaction was to evade the reporting obligation. *United States v. MacPherson*, 424 F.3d 183, 189 (2nd. Cir. 2005). The government need only prove that the person actually structured the funds with knowledge of reporting requirements and with the specific intent to avoid the reporting requirements. *United States v. Wollman*, 945 F.2d 79, 81 (4th Cir. 1991). It does not need to prove that the person structuring a transaction knew that structuring was illegal.

### 1. Claimant Structured

The government claims that because Claimant's deposits were in round numbers slightly less than the $10,000 reportable amount and were deposited at three different branches of Bank of America and three different branches of PNC Bank in a four-day period, the Claimant is guilty of structuring. Although deposits in such amounts prove that the Claimant knowingly structured these currency transactions, the government also must prove that no genuine issue of a material fact exists as to the additional two elements of structuring in order to merit summary judgment. 31 U.S.C. § 5324; *see MacPherson*, 424 F.3d at 189 (plaintiff must demonstrate by a preponderance of the evidence the three elements of the offense under 31 U.S.C. § 5324); *see also United States v. Leak*, 123 F.3d 787, 794 (4th Cir. 1997) (opining that the "proof that the accused structured transactions in amounts under $ 10,000 is not enough. It must also be proven that he structured for the specific purpose of evading the federal reporting requirements").

### 2. Claimant knowledge of the bank's legal obligation to report transactions in excess of $10,000

The first issue of genuine dispute concerns the Claimant's knowledge of the federal reporting requirements. As a general proposition, summary judgment is seldom appropriate

where an individual's particular state of mind is a decisive element of a claim or defense. *Miller v. Federal Deposit Ins., Corp.*, 906 F.2d 972, 974 (4th Cir. 1990). This is so because "a party's mental state is inherently a question of fact which turns on credibility." *United States v. Dollar Bank Money Market Account No. 1591768456*, 980 F.2d 233, 240 (3d. Cir. 1992); *see also United States v. 717 S. Woodward St.*, 2 F.3d 529, 534 (3d. Cir. 1993) (stating that when a person's state of mind is at issue and the record contains direct evidence of that state of mind in the form of that person's sworn statement, "conflicting circumstantial evidence normally creates only an issue of credibility for trial, and summary judgment is inappropriate").

In an attempt to overcome this general proposition and to show that Claimant had knowledge of the domestic financial institution's legal obligation to report transactions in excess of $10,000, the government argues that Claimant "admitted he made the deposits under $10,000 to avoid the bank reporting requirement for both Bank of America and PNC Bank. (Pl.'s Mem. Supp. Summ. J. at 9; Exh. 2 Girma Afework Dep. at 14, 16, and 17.) The government also argues that Claimant stated in his deposition that he purposely kept the deposit amounts below $10,000.00 so that he would not have to take his time and the teller's time to fill out the necessary form for deposits exceeding $10,000.00. (Pl.'s Mem. Supp. Summ. J. at 9; Exh. 2 Girma Afework Dep. at 14, 16, and 17.) In support of its argument, the government references page 14 of the Claimant's deposition testimony when he states, "When I went first to PNC and the cashier told me 'it's not possible. You have to file a form.' And then I didn't see that form, but how long will it take? You have to see and read it. And then if you want just not to file a form, you have to deposit less than 10,000." (Afework Dep. at 14.)

Claimant, however, argues that the government misinterpreted, and therefore grossly exaggerated his deposition testimony. In that regard, Claimant argues that page 14 of his

deposition transcript provides a legitimate reason why he decided to conduct business in a short period of time at two different banks. He further maintains that he did not know the contents of the form because the teller never told him what the form was for, and the teller neither described any of the information on the form nor explained to him what type of information was requested. (Afework Dep. at 38; Girma Afework Aff. ¶¶ 5, 8, 11, 14, 17, 20, 23, 26.) Therefore, he argues, that since he had no knowledge of the form's purpose, he had no knowledge of the bank's duty to report currency transactions in excess of $10,000. (Afework Aff. ¶¶ 6, 9, 12, 15, 18, 21, 24, 27.)

In *United States v. Wollman*, 945 F.2d 79 (4th Cir. 1991), the defendants conceded that a bank teller previously informed them of the federal requirements of reporting cash transactions in excess of $10,000. *Id.* at 81. However, they contended that they believed the requirements to be permissive, rather than mandatory. *Id.* Nevertheless, the United States Court of Appeals for the Fourth Circuit concluded that the district court rightfully rejected this assertion, given the convoluted course of the defendants' deposit transactions. *Id.* In so concluding, the Court noted that the defendants made seventeen separate currency deposits totaling $160,000 into one account, over four different days at five different branches of the bank. *Id.* at 80. The Court further noted that sixteen of these deposits were in the amount of $9500 and one was in the amount of $8000. *Id.* On three occasions, the Wollmans made two deposits at the same branch, one inside the bank and one at the drive through teller, within ten minutes of the other. *Id.* Furthermore, the Wollmans' interrogatory answers admitted that the teller told Robert Wollman that reporting to the I.R.S. was "necessary paperwork." *Id.* at 82. Hence, the Wollmans had confessed that a motivating factor in their deposit transaction was to avoid entanglement with the IRS –"a concession that implies perfect awareness that entanglement would assuredly have

resulted had the deposits been for $ 10,000 or more." *Wollman*, 945 F.2d at 82.

Claimant's actions in the present case are distinguishable from the Wollmans' intentional act of evading the IRS. The government has failed to prove that no reasonable trier of fact could conclude that Claimant did not know of the bank's legal obligation to report transactions in excess of $10,000. Although Claimant was aware of a form that should be filled out with such large transactions, he was never specifically told by a teller (as in the case of *United States v. Wollman*) that the information on this form would be communicated to the I.R.S or any other government entity. *See Dollar Bank*, 980 F.2d at 242 (reversing the district court's decision to grant the government's Motion for Summary Judgment based upon the fact that defendant thought the reporting requirement was a bank policy, rather than a legal obligation).

After reviewing the factual record in the light most favorable to Claimant, a genuine issue of material fact still exists regarding Claimant's mental state. Specifically, Claimant avers that he had no knowledge as to the bank's obligation to report cash deposits in excess of $10,000 because the teller never told him about such a reporting requirement, and all he was told was that he could fill out a form if he wanted to make a deposit over $10,000.00. Reasonable minds could differ as to the reason for Claimant's actions in depositing amounts less than $10,000. A reasonable trier of fact may not necessarily conclude that the Claimant knew of the bank's obligation simply because he deposited sums less than $10,000 after he was told he had to fill out a form. This, in and of itself, is insufficient to prove knowledge of the bank's reporting requirements. A rational trier of fact could conclude that Claimant did not possess the requisite knowledge as to the necessity of filing the form with the government; therefore, he may, not have structured his transactions for the purpose of evading federal reporting regulations.

### *3. The purpose of the structured transaction was to evade the reporting obligation*

As discussed above, a reasonable trier of fact could conclude that Claimant had no knowledge of the bank's obligation to report cash deposits more than $10,000. If the Claimant did not know of the bank's reporting requirements, it is difficult to conclude that he structured his deposits for the purpose of evading a reporting requirement of which he was unaware.

The government attempts to prove that Claimant structured his transactions to evade reporting requirements by comparing Claimant's actions with that of the defendant in *United States v. MacPherson*, 424 F.3d 183 (2nd. Cir. 2005). It is appropriate to note at the outset that *MacPherson* is not a case involving summary judgment, but rather a case of the government's appeal of a district judge's decision to acquit the defendant, despite a jury verdict of guilt. In *MacPherson*, the Court reversed the judgment of acquittal and remanded the case to the district court because, "MacPherson's willingness to sacrifice efficiency and convenience in depositing a quarter-million dollars through multiple small transactions structured to ensure that no one exceeded $10,000 amply supported a reasonable inference that MacPherson knew of and was intent on avoiding CTR reporting requirements." *MacPherson*, 424 F.3d. at 191.

Specifically, MacPherson traveled to three different banks on the same day to make identical deposits of $9,000 (in six out of seven consecutive weeks). *Id.* In addition, the defendant was a licensed real estate salesperson, who, similar to bank tellers, are required by law to file CTRs when dealing in cash transactions exceeding $10,000. *Id.* at 186, n.3; *see also* 31 U.S.C. § 5312(a)(2)(U). The court found that the jury verdict of guilty should not have been set aside because based upon those facts, circumstantial evidence existed from which a jury could have found that that the defendant intended to avoid the $10,000 trigger for CTR filings. *MacPherson*, 424 F.3d at 195.

Claimant, however, unlike the defendant in *MacPherson,* sheds doubt on the fact that he knew of the reporting requirements because he made a lot less cash deposits over a shorter period of time. And, the Claimant argues that he structured the deposits in the way he did because it would be less time consuming and more efficient than waiting for a teller to fill out a form of unknown length and complexity. (Afework Dep. at 34.) In addition, Claimant was not employed in a position that required him to have knowledge of statutory requirements to report cash transactions exceeding $10,000. Therefore, although there may exist sufficient circumstantial evidence from which a jury could draw an inference that Claimant had the requisite knowledge, a reasonable jury would not be required to conclude as such. Thus, there exists a genuine issue of material fact as to whether or not Claimant knew of the bank's reporting obligation. And, it is reasonable to conclude that Claimant could not evade an obligation of which he was unaware.

Lastly, the government relies on *United States v. $11,552.73 in United States Currency,* 2009 WL 2045340 (D. Mass. June 10, 2009), to argue that the Claimant structured his deposits for the purpose of evading the bank's reporting obligation. In *United States Currency,* the claimant and his family members visited four different post offices to purchase 57 money orders in 23 separate transactions in less than a month. The claimant asserted that he kept the money orders under $3000 out of convenience for himself and the postal employees. The court, nevertheless, ruled that the various money orders were sufficient evidence to establish structuring by a preponderance of the evidence. *Id.* at *5. Moreover, the court ruled in favor of the government on their Motion for Summary Judgment because claimant's ignorance of the transactions' illegality does not establish innocent ownership. *Id.* at *6.

More notably, the court granted the government's Motion for Summary Judgment because the claimant had admitted to intentionally purchasing money orders in amounts less than $3000 in order to avoid filling out paperwork that he knew he would be legally required to fill out if he purchased money orders in amounts more than $3000. The court noted "this is sufficient to establish his liability for structuring to avoid the reporting requirements of § 5325." *United States Currency*, 2009 WL 2045340 at *5. While the defendant in *United States Currency* claimed that his motive was to make things more convenient for himself and the Post Office, he still admitted to intentionally purchasing money orders in amounts less than $3000 in order to evade reporting guidelines. *Id.*

Unlike the defendant in *United States Currency*, the Claimant in the case at bar states that he had no knowledge of the banks' duty to report currency transactions in excess of $10,000, and thus, did not intentionally act to evade the bank's reporting requirements. (Afework Aff. ¶¶ 6, 9, 12, 15, 18, 21, 24, 27.) In fact, the Claimant here provides at least a questionable motive of conservation of time in depositing sums less than $10,000 in a short period of time at different branches. The government argues that Claimant's position is non-persuasive because it takes additional time to travel between banks, and thus, Claimant could not truly believe that he was saving time by not filling out the form. Unfortunately, the problem with the government's position is that the government, in its own affidavit, establishes that the banks were situated relatively close to each other. Thus, if the Claimant in this case had neither viewed the form nor inquired of the teller as to the amount of time it would take to fill out the form, it is conceivable that a reasonable trier of fact could conclude that Claimant might have believed that it would take less time to travel to two banks that were located very close to each other than it would to fill out the form. Hence, a genuine issue as to the element of "knowledge" exists. And,

therefore, summary judgment for the government is not appropriate. *See also United States v. Leak*, 123 F.3d 787, 794-95 (4th Cir. 1997) (opining that although a jury might infer that an individual knew of a bank's obligation to report cash transactions exceeding $10,000 from that individual's deposit of a large amount of cash in $9,000 installments, proof of that conduct alone does not automatically prove, as a matter of law, an intent to avoid those reporting requirements).

## IV. CONCLUSION

In a civil forfeiture action based on a violation of § 5324, the government cannot prevail on summary judgment if the claimant offers a reasonable and legitimate explanation for organizing transactions in amounts below $10,000, and that "explanation is verified by facts and circumstances which, if believed, would enable a rational jury to conclude by a preponderance of the evidence that the transactions were not structured for the purpose of evading the reporting requirements." *United States v. Dollar Bank Money Market Account No. 1591768456*, 980 F.2d 233, 240-41 (3d. Cir. 1992). Thus, for the foregoing reasons, the Court denies the government's Motion for Summary Judgment.

_/s/_____
Ivan D. Davis
United States Magistrate Judge

March 29, 2010
Alexandria, Virginia